FILED
November 10, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003892905

ANTHONY ASEBEDO (State Bar No. 155105)
**MEEGAN, HANSCHU & KASSENBROCK**
Attorneys at Law
11341 Gold Express Drive, Suite 110
Gold River, CA 95670
Telephone: (916) 925-1800
Facsimile: (916) 925-1265

Proposed Attorneys for Susan K. Smith,
Chapter 7 trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

[Sacramento Division]

In re:

VLADIMIR SHPAKOVSKIY &
NADEZHDA SHPAKOVSKIY,

Debtors.

Case No. 11-31945-B-7
Docket Control No. MHK-2

Date: December 13, 2011
Time: 9:32 a.m.
Dept.: B (Courtroom 32)
Hon. Thomas C. Holman

**TRUSTEE'S MOTION FOR AUTHORIZATION TO SELL REAL
REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(b), TO EMPLOY AND
COMPENSATE REAL PROPERTY BROKER, AND FOR RELATED RELIEF**

Susan K. Smith (the "Trustee"), as trustee of the above-captioned chapter 7 estate of Vladimir Shpakovskiy and Nadezhda Shpakovskiy (the "Debtors"), hereby moves the court pursuant to 11 U.S.C. § 363(b) for authorization to sell certain real property of the estate commonly known as Lot 82, Roaring Creek Road, in unincorporated Shasta County, California, bearing A.P.N. 044-160-024 (the "Property"), and to employ and compensate her broker, Wilson Realty of Redding, California ("Wilson") from sale proceeds at the close of escrow. In support of this motion, the Trustee respectfully represents as follows:

**I. BACKGROUND AND SUMMARY**

On May 13, 2011 (the "Petition Date"), the Debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code. The Trustee was appointed

aa:\MHK-2 sale mot

and continues to serve as the chapter 7 trustee for the Debtors' estate. See Declaration of Susan Smith ("Smith Declaration"), submitted herewith.

The Debtors identified the Property on the A-Schedule filed in the chapter 7 case, as having a value of $30,000.00, and as being unencumbered. On the C-schedule filed in their case, the Debtors claimed as exempt the amount of $7,052.00 in regard to the Property, and the Trustee has no objection to this exemption claim. See id.

As outlined below, the Trustee was initially uncertain that the market would support a sale of the Property, and as such she employed Wilson to market the Property before undergoing the expense associated with obtaining prior approval of Wilson's employment. Wilson was able to obtain a contract for sale of the Property in relatively short order, and the Trustee therefore brings this motion for approval of Wilson's employment effective as of the Petition Date, and to approve the proposed sale of the Property under 11 U.S.C. § 363(b).

**II. THE TRUSTEE'S EMPLOYMENT OF WILSON**

Based on Wilson's qualifications and familiarity with the relevant real estate market, the Trustee selected Wilson as her real estate broker for sale of the Property. On or about September 2, 2011, the Trustee and Wilson entered, subject to this court's approval, the Commercial, Residential Income and Vacant Land Listing Agreement dated August 25, 2011 (the "Listing Agreement"), under which the Trustee employed Wilson to market and sell the Property for the period August 25, 2011 through February 24, 2012. A true and correct copy of the Listing Agreement is submitted herewith as an exhibit to the Declaration of Sean Wilson ("Wilson Declaration"), submitted herewith.

Wilson's qualifications are set forth in the Wilson Declaration. Wilson's office is located in Redding, California, and specializes in vacant land, investment, recreational, and residential real estate. All properties listed for sale through Wilson are offered on the Shasta, Trinity, Tehama County Multiple Listing Services, and the Bay Area MLS Quattro system that serves twenty-two Central California and Bay Area Counties

aa:\MHK-2 sale mot

including San Francisco. Many listings are also featured on the Record Searchlight web site (Redding.com), Realtor.com, and the full color Real Estate Book. Id.

Wilson holds or represents no interest adverse to the Trustee, the Debtors or the bankruptcy estate. The only connection of Wilson to the Trustee, the Debtors, their creditors, and the bankruptcy estate is the prior business relationship under which Wilson marketed the property on behalf of the Trustee after August 25, 2011. See Wilson Declaration.

### III. THE PROPERTY

The Property consists of approximately 40 acres of undeveloped land located near Igo, California, a small community in rural Shasta County, California. As noted above, the Debtors valued the Property at $30,000.00.

In the ordinary course of business, the Trustee obtained from Placer Title Company a CTLA Preliminary Title Report dated September 28, 2011 ("Title Report") in regard to the Property. According to the Title Report, title to the Property is held by the Debtors as husband and wife, as joint tenants. A copy of the Title Report is submitted as an exhibit to the Smith Declaration.

The Title Report states in Exceptions No. 1 and No. 2 that encumbrances against the Property exist for real property taxes and supplemental taxes, if any, that are due and payable in twice-annual installments. Exception No. 4 in the Title Report identifies certain Covenants, Conditions, & Restrictions ("CC&R's") that govern the Property and others in the subdivision. The Trustee has received demands from two separate organizations that claim to have been organized under the CC&R's, for association dues and/or road fees. The Trustee proposes that both demands be paid from escrow, so as to avoid potential litigation that would outweigh the modest amounts of those demands. See Smith Declaration.

### IV. TERMS OF SALE

Through Wilson's efforts, the Trustee has obtained terms for sale of the Property, subject to the approval of this court. Those terms are stated in the Vacant

Land Purchase Agreement and Joint Escrow Instructions dated September 16, 2011, and the Counter Offer to Vacant Land Purchase Agreement and Joint Escrow Instructions (collectively, the "Sale Contract"), true and correct copies of which are submitted herewith as an exhibit to the Smith Declaration. The most important terms of sale are summarized as follows:

    a. The buyer, Fred Her ("Buyer") is to pay a purchase price $53,000.00 cash for title to the Property;

    b. The Buyer is to pay a $2,000.00 earnest money deposit that is refundable in the event the Trustee is unable to obtain approval of the sale or if another party successfully over-bids for the Property;

    c. Liens of record are to be paid from escrow;

    d. The Trustee is to pay her share of applicable costs of sale and is to pay the sales commission to Wilson Realty, from the sale escrow;

    e. The sale escrow is to close within sixty (60) days of entry of the court order approving the sale.

The Buyer has paid the $2,000 refundable earnest-money deposit, which the Trustee has deposited into an estate bank account. See Smith Declaration.

### V. PROPOSED SALE IN BEST INTEREST OF THE ESTATE

The Buyer is willing to pay the gross amount of $53,000.00 for the Property, which was valued by the Debtors at $30,000.00. Through Wilson Realty, the Property has been exposed to the market for several months, including by way of the Multiple Listing Service, and as such the Trustee believes that the agreed sales price reflects the market value. After payment of real property taxes due to Shasta County, the sale commission to Wilson Realty, road fees due to the Association, and costs of sale, the Trustee estimates that the sum of approximately $45,463.00 will remain, and $7,052.00 of that amount will be paid to the Debtors on account of their claim of exemption. Further, the sale of the Property is subject to overbids, which procedure will insure that the Property is sold at market value. Under these circumstances, the

aa:\MHK-2 sale mot

Trustee asserts that the proposed sale is in the best interests of the Debtors' creditors and the estate.

### VI. SALE PURSUANT TO 11 U.S.C. § 363(b)

By this Motion, the Trustee requests authority to sell the Property under the terms and conditions stated herein, pursuant to 11 U.S.C. § 363(b), subject to overbids at the hearing on this motion. The Trustee is the authorized representative of the Debtor's chapter 7 estate. 11 U.S.C. § 323(a). Accordingly, the Trustee also requests that the court expressly authorize the Trustee to execute any and all documents necessary to consummate the proposed sale, including, but not limited to, the deed conveying title on behalf of the estate.

### VII. LIENS OF RECORD AGAINST THE PROPERTY TO BE PAID FROM SALE ESCROW

The Property is subject to liens for real property taxes, assessments, supplemental taxes, and the like, and penalties and interest thereon, if any. These liens are identified at Exception Nos. 1 and 2 in the Title Report. The accrued portion of Exception Nos.1 and 2 of the Title Report shall be prorated and paid as of the close of escrow (the Property will remain subject to the unaccrued portion of taxes identified at Exceptions Nos. 1 and 2 following the close of escrow). The Trustee estimates that the amount to be paid from escrow on account of Exception Nos. 1 and 2 will be approximately $530.00[1]

The Property is also subject to liens for association dues and/or road fees. As noted above, two demands have been received in regard to such liens, and the Trustee estimates that approximately $647.00 will be the sum necessary to satisfy both such demands from escrow.

/ / /

/ / /

---

1. Following the sale, the Property will remain subject to the rights and easements identified at Exception Nos. 3 through 6 stated in the Title Report.

Exception No. 7 stated in the Title Report will be satisfied by the order of the United States Bankruptcy Court for the Eastern District of California approving the proposed sale.

### VIII. TAX CONSEQUENCES OF SALE

The Trustee has investigated the tax basis of the Property and the tax consequences of the sale of the Property. The Trustee anticipates that no income tax liability will result from sale of the Property, because the sale price is lower than the Debtors' cost of acquisition. See Smith Declaration.

### IX. DISPOSITION OF SALE PROCEEDS

The Trustee proposes that the sale proceeds shall be distributed from escrow as follows:

  a. First, full payment of real property taxes, supplemental taxes, and the like, and penalties and interest thereon, if any, secured by the Property, prorated as of the close of escrow (exception nos. 1 and 2 stated in the Title Report) will be made from escrow. The Trustee estimates that the amount necessary for payment of these claims will total approximately $530.00.

  b. Second, the amount necessary for satisfaction of the association and/or road fees payable to both associations described above (arising out of exception no. 4 in the Title Report) shall be paid from escrow. The Trustee estimates that the amount necessary for payment of these claims will total approximately $647.00 as of close of escrow.

  c. Third, sale costs estimated to be $1,060.00 and the ten percent (10%) sales commission to Wilson, in the amount of $5,300.00.

  d. The net remaining funds, estimated to be approximately $43,463.00 will be paid to the Trustee for payment of allowed claims in the chapter 7 case and for payment of the $7,052.00 exemption claim of the Debtors.

///

///

## X. OVERBID PROCEDURE

The Trustee proposes that the sale shall be subject to overbids. The Trustee will recommend at the time of the hearing that the court approve the following overbid procedure:

   a. All overbids shall be on substantially the same terms and conditions as the pending sale.

   b. The first initial overbid shall be in the minimum amount of $54,000.00 ($1,000.00 over pending offer), and subsequent overbids shall be in minimum increments of $1,000.00.

   c. Persons wishing to overbid must provide cashier's check in the minimum amount of $2,000.00 to the Trustee at or before the time the prospective purchaser makes the first overbid at the hearing. Cashier's checks should be made payable to the bidder and endorsed over to the Trustee at the hearing in the event the prospective purchaser is the successful bidder.

   d. The successful bidder shall be required to pay the balance of the purchase price and close the sale on those terms stated in the Sale Agreement, except that the parties may agree to close of the sale at a later date.

   e. In the event that, through no fault of the Trustee, the approved purchaser fails to close escrow during the time period stated in the Sale Agreement, or such later date as Trustee and the approved purchaser may mutually agree, the entire amount of all deposits then held shall be forfeited to the Trustee and may be applied by the Trustee toward any damages incurred by the estate as a consequence of that party's default.

   f. The cashier's checks of all unsuccessful bidders shall be returned immediately following the hearing.

   g. A back-up bid may be approved, and the Property may be sold to the back-up bidder, at the option of the back-up bidder, if the successful bidder fails to

///

7

aa:\MHK-2 sale mot

close escrow within the time limitations provided above, without necessity of a further court order.

### XI. CONCLUSION

The proposed sale of the Property is in the best interests of the estate and its creditors, as it will result in funds for disbursement to holders of allowed claims. The Trustee believes that the terms of sale are the best that can be obtained and reflect the market value of the Property, and therefore respectfully requests that the court enter an order providing as follows:

1. Approving the proposed sale of the Property on the terms and conditions set forth above;

2. Authorizing the Trustee to execute any and all documents necessary to consummate the sale, including but not limited to, the deed conveying title on behalf of the estate;

3. Approving the employment of Wilson as the Trustee's real property broker for the Property, effective as of August 25, 2011;

4. Authorizing the Trustee to pay the 10% sales commission ($5,300.00) to Wilson from the sale escrow, as compensation to Wilson for professional services rendered to the estate, along with the other claims described above;

5. Approving the overbid procedures set forth above, should any party appear and seek to bid for purchase of the Property; and

6. Granting such other and further relief as the court deems proper.

Respectfully submitted,

MEEGAN, HANSCHU & KASSENBROCK

DATED: 11.09.2011    By: _____
Anthony Asebedo
Attorneys for Susan K. Smith, trustee

aa:\MHK-2 sale mot